**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE REQUEST FROM THE UNITED )
KINGDOM PURSUANT TO THE TREATY )
BETWEEN THE UNITED STATES OF )
AMERICA AND THE UNITED KINGDOM )
OF GREAT BRITAIN AND NORTHERN )    No. _____
IRELAND ON MUTUAL LEGAL )
ASSISTANCE IN CRIMINAL MATTERS IN )
IN THE MATTER OF OPERATION LIME )
)

## MEMORANDUM OF LAW IN SUPPORT OF EX PARTE APPLICATION TO APPOINT A COMMISSIONER

The United States is seeking an order appointing a commissioner to collect evidence

requested by the United Kingdom and to seek other orders, as needed, to execute the United

Kingdom's January 10, 2014, treaty request ("the request"), as authorized by the relevant

international agreements and 18 U.S.C. § 3512. The United Kingdom made the request in

connection with the criminal prosecution of Peter Anthony Carroll and related asset confiscation

proceedings. The request was made pursuant to the *Treaty Between the Government of the*

*United States of America and the Government of the United Kingdom of Great Britain and*

*Northern Ireland on Mutual Legal Assistance in Criminal Matters*, U.S.-U.K., Jan. 6, 1994, S.

Treaty Doc. No. 104-2 (1996) [hereinafter, the 1994 MLAT] and the *Instrument as contemplated*

*by Article 3(2) of the Agreement on Mutual Legal Assistance Between the United States of*

*America and the European Union signed 25 June 2003, as to the application of the Treaty*

*Between the Government of the United States of America and the Government of the United*

*Kingdom of Great Britain and Northern Ireland on Mutual Legal Assistance in Criminal Matters*

*signed 6 January 1994*, U.S.-U.K., Dec. 16, 2004, S. Treaty Doc. No. 109-13 (2010)

1

[hereinafter, the Instrument], a freestanding agreement that affirms and amends the 1994 United

States-United Kingdom MLAT in light of the mutual legal assistance treaty signed by the United

States and the European Union in 2003.

The United States asks this Court to appoint a commissioner to execute this request and

any subsequent, supplemental requests made by the United Kingdom within the scope of

"Operation Lime." Expedited consideration is respectfully requested, as the United Kingdom

has informed the United States that evidence pertaining to Carroll's U.S. asset holdings will be

relevant for a hearing in the United Kingdom on January 12, 2015. Although this application

package is submitted on an ex parte basis, the United States is not moving this Court to seal the

filings in this miscellaneous matter on the basis of any law enforcement need to conduct a covert

investigation. Moreover, United Kingdom has not invoked the confidentiality provisions

available under the relevant MLAT and Instrument.

A.   Factual Background

On January 25, 2013, Peter Anthony Carroll (also known as Tony Carroll, Tony Leddy,

and Dr. Tony Leddy), was stopped by U.K. police in the village of Freckleton, county of

Lancashire, situated an hour from Manchester on the eastern coast of England. He was driving a

dump truck, which was searched upon suspicion and was found to contain cannabis plant debris.

Based on this finding, the police also searched the property the dump truck had just departed,

comprised of a house, a former garden center, and a number of industrial units. There, police

found an extensive marijuana growing operation, including 3000 cannabis plants at varying

stages of maturity. The property was highly secured and monitored by closed-circuit television

cameras, and officers located an imitation firearm, a stun gun, numerous knives, and a machete.

Carroll was arrested with €1,600 in currency on his person, and another €12,000, plus expensive

jewelry, was found on the premises. Officers additionally discovered an Irish passport and a Spanish driver's license, both bearing the alias "Tony Leddy," but picturing Carroll. Subsequent investigation has also revealed that the electricity bill for the property, approximately €12,700 per quarter, was paid for by Tony Carroll.

The police obtained bank records in the U.K. showing that Carroll maintains assets in the United States, potentially including bank accounts and a property in Kissimmee, Florida, co-owned by Carroll and his wife, Jennifer Carroll. According to Her Majesty's Revenue and Customs, Carroll has not paid taxes on any income in the United Kingdom in more than a decade, although he contended at trial that he is not a U.K. resident and that he lives in Spain. Carroll has, however, been an officer for eighteen limited liability companies (now dissolved), all incorporated since 2005, and he claims to manage a number of companies in the United Kingdom with his sons. Further, Carroll owns properties in Spain, a yacht (location unknown), and, potentially, assets in Brazil, the home country of his girlfriend and co-defendant.

The day after the police stop, on January 26, 2013, Carroll and three other co-conspirators were charged with conspiracy to produce a controlled Class B drug (cannabis) in violation of the U.K. Criminal Law Act of 1977, § 1(1), for offenses carried out between September 2011 and January 2013. On September 6, 2013, Carroll and three other defendants were found guilty after a trial in the Preston Crown Court (Lancashire County). Carroll was given the longest sentence at seven and a half years. The Crown Prosecutor has instituted confiscation proceedings under the U.K. Proceeds of Crime Act of 2002 to calculate Carroll's criminal benefit and determine the amount to be confiscated by the Court. On May 20, 2013, Judge Baker of the Preston Crown Court entered a restraining order freezing Carroll's assets in England. The United Kingdom sent a mutual legal assistance (MLA) request to the United

States seeking bank records and other evidence for use in these confiscation proceedings. Although the request is dated January 10, 2014, a confiscation hearing was postponed by the Preston Crown Court until January 2015. Therefore, the U.S. Department of Justice's Office of International Affairs recently delegated the MLA request for execution to the Asset Forfeiture and Money Laundering Section.

The United Kingdom requests that United States render mutual legal assistance by providing records from financial institutions or other entities, including CenterState Bank of Florida, concerning assets or liabilities maintained by Carroll or his wife (including those in the name of Carroll's aliases or legal entities that he controls). It is anticipated that the Crown Prosecutor may supplement this initial MLA request and ask the United States for further assistance from the commissioner, if so appointed. The commissioner designated by this Court shall have the authority to issue such orders as may be necessary to execute this and any supplemental treaty requests related to the gathering of evidence in this matter, Operation Lime, on behalf of the United Kingdom.

The requested assistance is necessary to determine the criminal benefit obtained by Carroll; to confirm the ownership of the bank accounts and real property in the United States; and to permit analysis of financial transactions and information pertaining to the source and destination of the proceeds of the drug conspiracy. Calculations of criminal benefit under the relevant section of the U.K. Proceeds of Crime Act can look back six years from the date of the defendant's charge, so any subpoenas served by the commissioner will adhere to that limitation. The proposed Order accompanying this application authorizes disclosure to U.S. law enforcement and attorneys for the United States, as well as contract and support personnel

working with them, in the event that evidence collected on behalf of the United Kingdom

provides a basis for the investigation of activity violating U.S. law or a basis for forfeiture.

B.    Authority to Execute the Request

1.    The 1994 MLAT and Instrument

A treaty constitutes the law of the land.  U.S. Const. art. VI, cl. 2.  The provisions of a

treaty have equal footing with acts of Congress and are binding on the courts.  *Asakura v. City of*

*Seattle, Washington*, 265 U.S. 332, 341 (1924); *United States v. The Peggy*, 5 U.S. 103 (1801);

*In re Commissioner's Subpoenas*, 325 F.3d 1287, 1291 (11th Cir. 2003).  To the extent that the

provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes

the statute.  *Zschernig v. Miller*, 389 U.S. 429, 440-41 (1968); *In re Commissioner's Subpoenas*,

325 F.3d at 1305-06; *United States v. Erato*, 2 F.3d 11, 15-16 (2d Cir. 1993).

As noted above, the United States and the United Kingdom are parties to two relevant,

bilateral agreements, the 1994 MLAT, and the Instrument, which amended some of the

provisions of the 1994 MLAT in light of the United States-European Union treaty signed in

2003.  The United States and the United Kingdom signed the 1994 MLAT for the purpose of

"[improving] the effectiveness of the law enforcement authorities of both countries in the

investigation, prosecution, and combating of crime through cooperation and mutual legal

assistance in criminal matters."  *See* 1994 MLAT, Preamble.

In accordance with the provisions of the MLAT, each state is obligated to provide

assistance to the other in criminal investigations, prosecutions, and proceedings, by: taking the

testimony of persons; providing documents, records, and evidence; serving documents; locating

or identifying persons; transferring persons in custody; executing requests for searches and

seizures; and, most significantly in this matter, identifying, tracing, freezing, seizing, and

forfeiting the proceeds and instrumentalities of crime. *See* 1994 MLAT, art. 1 (scope of

assistance); art. 19 (defining "proceedings" to include "the freezing, seizure or forfeiture of the

proceeds and instrumentalities of crime"); *see also In re Commissioner's Subpoenas*, 325 F.3d

1287, 1290 (11th Cir. 2003) (discussing the benefits of treaty-based mutual legal assistance,

which contractually binds the signatories, as compared with assistance requests via letters

rogatory); *Barr v. Dep't of Justice*, 645 F. Supp. 235, 237 (E.D.N.Y. 1986), *aff'd*, 819 F.2d 25

(2d Cir. 1987) (explaining that parties to mutual legal assistance treaties are not limited to the

enumerated methods of assistance contained in the four corners of the treaty).  Furthermore, the

Instrument amends article 16 of the 1994 MLAT, which specifically envisions mutual legal

assistance in the context of forfeiture and confiscation proceedings.  Article 16 bis,

"Identification of Bank Information," details the ways in which the requested state may provide

assistance by searching its domestic financial system to locate accounts, assets, and legal and

natural persons, including those suspected of involvement in money laundering.  Instrument, art.

16 bis.  Neither 1994 MLAT nor the Instrument imposes a dual criminality requirement as a

precondition for providing assistance. *See* 1994 MLAT, art. 3 (citing three bases for refusal of

assistance that do not include dual criminality).  Consequently, each country is encouraged, in

light of the purposes of the 1994 MLAT and the newer U.S.-E.U. treaty, to provide assistance

without regard to whether the conduct investigated or prosecuted would constitute an offense

under the laws of the requested state, except as otherwise provided by U.S. law and in the case of

antitrust investigations and proceedings. *See* Letter of Submittal from Warren Christopher, U.S.

Dep't of State, to William J. Clinton, President of the United States, Jan. 6, 1995, S. Treaty Doc.

No. 104-2.

The 1994 MLAT, the Instrument, and 18 U.S.C. § 3512(a)(1) empower federal courts to execute foreign requests in order to comply with U.S. treaty obligations. *See id.* ("Article 5 provides that a [requested state] shall take whatever steps it deems necessary to give effect to requests from the other [state]."). The 1994 MLAT provides that "the courts of the [requested state] shall have authority to issue subpoenas, search warrants, or other orders necessary to execute" requests and contemplates that federal courts will use compulsory measures to execute such requests. *See* 1994 MLAT, arts. 5 and 8; Letter of Submittal from Warren Christopher, U.S. Dep't of State, to William J. Clinton, President of the United States, Jan. 6, 1995, S. Treaty Doc. No. 104-2 ("Article 8 provides that the [requested state] may compel, if necessary, the taking of testimony or production of documents in itsterritory on behalf of the [requesting state].").

2.      Statutory Authority Grounding Execution of Requests for Assistance

The 1994 MLAT is designed to be self-executing and requires no implementing legislation. *See* Letter of Transmittal from William J. Clinton, President of the United States, to the Senate of the United States (Jan. 23 1995). Upon its entry into force in the United States in 1996, the Treaty became the law of the land, equal to any federal statute. *See, e.g., In re Commissioner's Subpoenas*, 325 F.3d at 1291. However, because the procedural provisions in many treaties are minimal, federal courts have routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the "commissioner process") to execute treaty requests from foreign authorities. *Id.* at 1305-06. Substantive U.S. law regarding searches, seizures, and other compulsory processes provide legal mechanisms for the execution of such assistance requests.

On October 19, 2009, President Obama signed the Foreign Evidence Request Efficiency

Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086. This law enacted 18 U.S.C. § 3512, which

explicitly authorizes a federal court to:

> issue such orders as may be necessary to execute a request from a foreign
> authority for assistance in the investigation or prosecution of criminal offenses, or
> in proceedings related to the prosecution of criminal offenses, including
> proceedings regarding forfeiture, sentencing, and restitution.

Section 3512 directly empowers the federal courts to execute requests and separately codifies in

Title 18 the longstanding practices and procedures employed by the United States and the federal

courts to execute requests by foreign authorities for assistance to the fullest extent possible under

U.S. law. Congress enacted § 3512 to make it "easier for the United States to respond to these

requests by allowing them to be centralized and by putting the process for handling them within

a clear statutory scheme." 155 Cong. Rec. S6810 (daily ed. June 18, 2009) (statement of Sen.

Whitehouse). Today, § 3512 is employed to provide treaty-based mutual legal assistance when

compulsory process is needed; 28 U.S.C. § 1782 is reserved for use in executing letters rogatory

or requests from foreign courts or international tribunals.

C.     Execution of Foreign Requests for Assistance Under the MLAT and 18 U.S.C. § 3512

Section 3512 provides:

> [u]pon application, duly authorized by an appropriate official of the Department
> of Justice, of an Attorney for the Government, a Federal judge may issue such
> orders as may be necessary to execute a request from a foreign authority for
> assistance in the investigation and prosecution of criminal offenses, or in
> proceedings related to the prosecution of criminal offenses, including proceedings
> regarding forfeiture, sentencing and restitution.

For purposes of § 3512, an application is "duly authorized by an appropriate official of the

Department of Justice" when the Department of Justice, Criminal Division, Office of

International Affairs, has reviewed and authorized the request and is executing the request itself

8

or has delegated its execution to another Government attorney.  In this matter, such authorization

and delegation is evidenced by a letter dated November 6, 2014, from the Office of International

Affairs, to the Asset Forfeiture and Money Laundering Section, referring the MLA request for

execution.

As to the "foreign authority" making the request, § 3512(h) provides:

> [t]he term "foreign authority" means a foreign judicial authority, a foreign
> authority responsible for the investigation or prosecution of criminal offenses or
> for proceedings related to the prosecution of criminal offenses, or an authority
> designated as a competent authority or central authority for the purpose of making
> requests for assistance pursuant to an agreement or treaty with the United States
> regarding assistance in criminal matters.

In this matter, the Crown Prosecution Service is the designated prosecuting authority, authorized

by U.K. law to issue a letter of request pursuant to the relevant bilateral agreements.  The Crown

Prosecutor made this MLA request through the U.K. Central Authority, the Home Office.

Moreover, in enacting § 3512, Congress intended that federal courts facilitate to the

fullest extent the execution of requests by foreign authorities for assistance in criminal matters

and Congress endeavored to streamline and expedite the execution of such requests.  Section

3512 authorizes federal courts to issue "such orders as may be necessary to execute a request."

Such orders specifically include orders for the provision of testimony or a statement or the

production of documents or other things, or both; and orders appointing "a person" to direct the

taking of testimony or statements or the production of documents or other things, or both.

§ 3512(a)(1)-(2).  Section 3512(c)(3) authorizes filing this application in the District of

Columbia.  Here, compelling records on behalf of the United Kingdom falls squarely within the

type of assistance contemplated by the 1994 MLAT, the Instrument, and § 3512.

D.     Appointment of a Person as Commissioner to Collect Evidence

      1.     Statutory Authorization

Section 3512(b) provides that a federal judge may "issue an order appointing a person to direct the taking of testimony or statements or of the production of documents or other things, or both." The statute further authorizes the person appointed to: issue orders requiring the appearance of a person, or the production of documents or other things, or both; administer any necessary oath; take testimony or statements; and receive documents or other things. Commensurate with past practice under 28 U.S.C. § 1782, it is anticipated that a federal court shall appoint a Government attorney as "commissioner."

      2.     Procedures for Evidence Collection

Section 3512(a) specifically empowers a federal judge to issue "such orders as may be necessary" to execute the foreign request for assistance. This authorization encompasses orders specifying the procedures to be used to collect particular evidence, including those procedures requested by the foreign authority to facilitate the use of that evidence. In executing a request made pursuant to a treaty, a court has the obligation to prescribe effective and expeditious procedures designed to promote the purpose of the treaty. *In re Commissioner's Subpoenas*, 325 F.3d at 1292-1304. Nothing in § 3512 suggests any limitation on a court's power to exercise "complete discretion in prescribing the procedure to be followed," as was available under 28 U.S.C. § 1782. *See In re Letter of Request from the Crown Prosecution Service of the United Kingdom*, 870 F.2d 686, 693 (D.C. Cir. 1989) (citing S. Rep. 88-1580, reprinted in 1964 U.S.C.C.A.N. 3782, 3789); *see also* Fed. R. Crim. P. 57(b) ("A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district."); *White v.*

*Nat'l Football League*, 41 F.3d 402, 409 (8th Cir. 1994) (a court may issue whatever process it deems necessary to facilitate disposition of a matter before it).

    a.    <u>Procedures Authorized by Other Statutes</u>

In addition, § 3512 references specific U.S. laws authorizing the gathering of certain evidence and, by doing so, adopts any statutorily mandated procedures in relation to obtaining orders for search warrants, orders for the content of stored wire or electronic communications or records related thereto, and orders for a pen register or a trap and trace device. It is not currently anticipated that these methods will be needed in this case.

    b.    <u>Orders by the Person Appointed: Commissioner's Subpoenas</u>

Section 3512 authorizes the "person" appointed (here, and in past practice under 28 U.S.C. § 1782, the "commissioner") to issue orders "requiring the appearance of a person, or the production of documents or other things, or both." Further, the 1994 MLAT contemplates the taking of statements and the provision of records. 1994 MLAT, art. 1 ("assistance shall include . . . taking the testimony or statements of persons; producing documents, records, and evidence"). Here, the United Kingdom asks that the information sought be obtained by lawful, compulsory measure in the United States, if necessary. If this Court so orders, the commissioner may use "Commissioner's Subpoenas" to obtain the requested evidence and information. *See In re Commissioner's Subpoenas*, 325 F.3d at 1291 (incorporating in pertinent part a district court's order directing use of commissioner's subpoenas); *Erato*, 2 F.3d at 13-14 (same). This commissioner's subpoena is simply a version of the "order" to be issued by the person appointed by the court under § 3512, directing the production of evidence. Section 3512 expressly authorizes the service and enforcement of such orders, or commissioner's subpoenas, anywhere

in the United States (i.e., coextensive with the service of subpoenas in U.S. criminal investigations and prosecutions).

      c.      Notice of Evidence Taking

This application is made by the United States ex parte, consistent with practice in domestic criminal matters and prior practice on behalf of foreign authorities under 28 U.S.C. § 1782. *In re Letter of Request from the Crown Prosecution Service of the United Kingdom*, 870 F.2d at 688; *In re Letters Rogatory from the Tokyo District, Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976). Both § 3512 and the 1994 MLAT at article 8 authorizes use of legal process in the execution of requests comparable or similar to that used in domestic criminal investigations or prosecutions. Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any party other than the recipient (i.e., no notice to targets or defendants), orders and commissioner's subpoenas likewise should require no notice other than to the recipient of the subpoena. In the absence of a specific request to provide notice, a federal district court should authorize a commissioner to collect the evidence requested without notice to any party other than the recipient of a commissioner's subpoena.

      d.      Right to Financial Privacy Act

The Right to Financial Privacy Act, 12 U.S.C. §§ 3401-3422, does not apply to execution of foreign legal assistance requests. *In re Letters of Request from the Supreme Court of Hong Kong*, 821 F. Supp. 204, 211 (S.D.N.Y. 1993); *Young v. Dep't of Justice*, 882 F.2d 633, 639 (2d Cir. 1989); *In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti*, 669 F. Supp. 403, 407 (S.D. Fla. 1987). Consequently, when a request entails compulsion of financial records, the notice provisions of the Act do not apply, and the commissioner need not give nor arrange for the custodian to give notice to an accountholder.

E.    Conclusion

The instant request is exactly the type of request contemplated by 18 U.S.C. § 3512. As demonstrated by its efforts to improve legislation related to providing foreign legal assistance, Congress intended the United States to set an example by making judicial assistance generously available. *See, e.g., In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1153-54 (11th Cir. 1988). Section 3512 enables the United States to respond "more quickly . . . to foreign evidence requests. These efforts will assist [the United States] with [its] investigations as foreign authorities will be urged to respond in kind to our evidence requests in a speedy manner." 155 Cong. Rec. H10093 (daily ed. Sept. 30, 2009) (statement of Rep. Schiff).

Accordingly, to execute this request and any related supplements in Operation Lime, the United States asks this Court to issue the attached Order pursuant to the 1994 MLAT, Instrument, and 18 U.S.C. § 3512, appointing the undersigned attorney as commissioner and authorizing her to take the actions necessary to execute the MLA request, including issuing commissioner's subpoenas to obtain the evidence requested and adopting procedures relating to the receipt of such evidence that are consistent with its intended use in the United Kingdom.

Respectfully submitted,

JAIKUMAR RAMASWAMY, CHIEF
ASSET FORFEITURE AND MONEY
   LAUNDERING SECTION

By:   *Marybeth Grunstra*

MARY K. BUTLER
Deputy Chief
A.J. DE KLUIVER
Assistant Deputy Chief
MARYBETH GRUNSTRA

13

Trial Attorney
U.S. Department of Justice
Criminal Division
Asset Forfeiture and Money
    Laundering Section
1400 New York Avenue NW, 10100
Washington, DC  20530
Telephone:      (202) 514-1263
Fax:               (202) 616-2547

Attorneys for Applicant
UNITED STATES OF AMERICA